# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

In re:

     Rodney Ryan and          Bankruptcy Case No. 19-29833-beh
     Jill Ryan,                 Chapter 7
               Debtors.

Rodney and Jill Ryan, and
Fortune & McGillis, S.C.,

       Defendants-Appellants,

    vs.               Dist. Ct. Case No. 2:21-cv-00449-BHL
                  Bankruptcy Adv. Case No. 19-02209

Branko Prpa MD LLC

       Plaintiff-Appellee.

---

Appeal from the United States Bankruptcy Court
for the Eastern District of Wisconsin
Bankruptcy Case No. 19-29833
Adversary Case No. 19-02209

---

# BRIEF OF APPELLANTS
# RODNEY RYAN, JILL RYAN,
# AND FORTUNE & McGILLIS, S.C.

---

**STEINHILBER SWANSON, LLP**
*Attorneys for Debtors/Defendants/Appellants*
Claire Ann Richman
Colton J. Chase
122 W. Washington Ave., Suite 850
Madison, WI 53703-2718
Tel: (608) 630-8990/Fax: (608) 630-8991
crichman@steinhilberswanson.com
cchase@steinhilberswanson.com

Rodney Ryan ("Ryan") and Jill Ryan (together, "Debtors" or "Ryans") and Fortune & McGillis, S.C. ("FMSC") (together with the Debtors, "Defendants" or "Appellants"), by their counsel Steinhilber Swanson LLP, by Attorney Claire Ann Richman, hereby submit their appellate brief and arguments.

## CORPORATE DISCLOSURE STATEMENT

Appellant Fortune & McGillis, S.C. is a corporation organized under the laws of the state of Wisconsin. It has no corporate parent, and no publicly held corporation owns more than 10% of the stock of Fortune & McGillis, S.C.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ ii

TABLE OF CONTENTS.................................................................................... iii

TABLE OF AUTHORITIES ............................................................................. iv

STATEMENT REGARDING ORAL ARGUMENT ..............................................1

STATEMENT OF JURISDICTION.....................................................................1

STATEMENT OF ISSUES ................................................................................2

STANDARD OF REVIEW ................................................................................3

STATEMENT OF THE CASE ...........................................................................3

SUMMARY OF ARGUMENT ..........................................................................8

ARGUMENT .................................................................................................11

    I.     THE COMPROMISE AGREEMENT AND OWCH ORDER DID NOT CREATE AN EXPRESS TRUST IN FAVOR OF MEDICAL PROVIDERS..............................................................................11

    II.    WIS. STAT. § 102.27 PRECLUDES THE CREATION OF A TRUST IN FAVOR OF CREDITORS............................................................16

    III.   A CONSTRUCTIVE TRUST IS NOT WARRANTED. ...................20

    IV.   THE DEBTORS HAVE AN INTEREST IN THE COMPROMISE FUNDS SUFFICIENT TO BRING THE FUNDS WITHIN PROPERTY OF THE ESTATE.........................................................22

CONCLUSION ...............................................................................................23

Case 2:21-cv-00449-BHL   Filed 06/07/21   Page 3 of 29   Document 9

# TABLE OF AUTHORITIES

**Cases**

*Butner v. United States*, 440 U.S. 48, 55 (1979)........................................................12

*Dubis v. Zarins (In re Teranis)*, 128 F.3d 469, 473 (7th Cir. 1997)........................21

*French v. Wachovia Bank*, N.A., 722 F.3d 1079 (7th Cir. 2013)............................16

*French v. Wachovia Bank, Nat. Ass'n*, 800 F. Supp. 2d 975, 985 (E.D. Wis. 2011)
................................................................................................................................15

*In re Associated Enterprises, Inc.*, 234 B.R. 718, 720 (Bankr. W.D. Wis. 1999)...12

*In re Brien*, 128 B.R. 220, 223–224 (Bankr. E.D. Wis. 1991) ................................19

*In re Hanes*, 214 B.R. 786, 814 (Bankr. E.D. Va. 1997)........................................16

*In re Marrs-Winn Co., Inc.*, 103 F.3d 584, 589 (7th Cir. 1996).............................22

*In re Midway Airlines, Inc.*, 383 F.3d 663, 668 (7th Cir. 2004)................................3

*In re Mueller Travel Agency, Inc.*, 56 Wis. 2d 207, 212 201 N.W.2d 589 (Wis.
1972) ......................................................................................................................13

*La Crosse Lutheran Hosp. v. Oldenburg*, 73 Wis. 2d 71, 75, 241 N.W.2d 875,
(1976).....................................................................................................................17

*Matter of Stiennon*, 73 B.R. 905, 906 (Bankr. W.D. Wis. 1987) .................... 21, 23

*Otjen v. Frohbach*, 148 Wis. 301, 134 N.W. 832, 835 (1912) ................................13

*State ex rel. Kalal v. Cir. Ct. for Dane Cty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633,
681 N.W.2d 110.....................................................................................................17

*Venne v. Lenk (In re Lenk)*, 44 B.R. 814, 816 (Bankr. W.D. Wis. 1984)... 13, 14, 15

*Wilharms v. Wilharms*, 93 Wis. 2d 671, 678, 287 N.W.2d 779 (1980)...................20

**Statutes**

11 U.S.C. § 541(a)(1)................................................................................................22

11 U.S.C. § 541(d) ....................................................................................................22

11 U.S.C. § 727 ...........................................................................................................7

Case 2:21-cv-00449-BHL   Filed 06/07/21   Page 4 of 29   Document 9

28 U.S.C. § 1334 ...........................................................................................1

28 U.S.C. § 157 .............................................................................................1

28 U.S.C. § 158(a) ........................................................................................2

Wis. Stat. § 102.26 ......................................................................................21

Wis. Stat. § 102.26(3) ............................................................... 17, 18, 19, 20

Wis. Stat. § 102.26(3)(b) .............................................................................8

Wis. Stat. § 102.26(3)(b)(2) ........................................................................7

Wis. Stat. § 102.27(1) ........................................................................ passim

Wis. Stat. §102.27 .............................................................................. passim

Wis. Stat. §102.27(1) .................................................................................10

## Rules

Fed. R. Civ. P. 56(c) ....................................................................................3

Wis. S.C.R. 1.15(b)(1) ...............................................................................16

Case 2:21-cv-00449-BHL   Filed 06/07/21   Page 5 of 29   Document 9

## STATEMENT REGARDING ORAL ARGUMENT

Appellants request that this Court hear oral argument on this appeal.

## STATEMENT OF JURISDICTION

This appeal arises from the Bankruptcy Court's Decision on Plaintiff's Motion for Summary Judgment and Objection to Debtors' Claim of Exemptions ("Decision") of the Honorable Beth E. Hanan, United States Bankruptcy Judge for the United States Bankruptcy Court for the Eastern District of Wisconsin in the Adversary Proceeding Number 19-02209 ("Adversary Proceeding") in the Chapter 7 Bankruptcy Case Number 19-29833 ("Main Case") entered on March 24, 2021, and the Bankruptcy Court's Order on Plaintiff's Motion for Summary Judgment ("Summary Judgment Order") and Order on Plaintiff's Objection to Debtors' Claim of Exemptions ("Exemptions Order") (together, "Orders"), holding that monies received as a result of Debtor Rodney Ryan's compromise of a Workers' Compensation claim and held in the trust account of FMSC were not property of the Debtors' bankruptcy estate and therefore were not subject to a claim of exemption.

The Bankruptcy Court possessed jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157, as the case below concerned the administration of the estate and the allowance of exemptions from property of the estate, and therefore arose under title 11 and was a core proceeding. This Court possesses jurisdiction pursuant to 28

1

U.S.C. § 158(a), in that the Bankruptcy Court's Decision and Orders constitute final judgments, orders, or decrees which are appealable as a matter of right. The Appellants filed a timely notice of appeal on April 7, 2021.

<h2 style="text-align:center">STATEMENT OF ISSUES</h2>

1. Whether the Bankruptcy Court for the Eastern District of Wisconsin erred in determining that the OWCH Order Approving the Compromise Agreement created an express trust in favor of the Debtor Rodney Ryan's medical providers and lienholders, and that therefore the Compromise Amount was not property of the Debtors' bankruptcy estate and not subject to a claim of exemption.

2. Whether the Bankruptcy Court for the Eastern District of Wisconsin erred when it determined that Wis. Stat. § 102.27(1) did not preclude the creation of an express trust in favor of Debtor Rodney Ryan's medical providers and lienholders or otherwise protect the settlement amount.

3. Whether the Bankruptcy Court for the Eastern District of Wisconsin erred when it found a basis to impose a constructive trust over the Compromise Amount in favor of the Debtor Rodney Ryan's medical providers and lienholders, and that therefore the compromise amount was not property of the Debtors' bankruptcy estate and not subject to a claim of exemption.

4. Whether the Bankruptcy Court for the Eastern District of Wisconsin erred when it determined that the Defendants' interest in the Compromise Amount

did not create an equitable future interest sufficient to bring the Compromise Amount within the property of the Debtors' bankruptcy estate, and therefore was not subject a claim of exemption.

## STANDARD OF REVIEW

The District Court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *In re Midway Airlines, Inc.*, 383 F.3d 663, 668 (7th Cir. 2004). A Bankruptcy Court's grant of summary judgment is a conclusion of law that is reviewed de novo. *Midway Airlines*, 383 F.3d at 668. "A grant of summary judgment will be affirmed if 'there is no genuine issue of material fact and [...] the moving party is entitled to judgment as a matter of law.'" *Midway Airlines*, 383 F.3d at 668 (citing Fed. R. Civ. P. 56(c)).

## STATEMENT OF THE CASE

On May 9, 2017, Appellant FMSC filed a claim for workers' compensation benefits on behalf of Rodney Ryan against his employer, Marvin Gleason Contractors, Inc. In that claim Ryan asserted that he had suffered an injury to his back and right shoulder and upon returning to his employment, engaged in activities that further advanced the progression of his underlying back and shoulder disability. Ryan's workers' compensation claim was comprised of: (1) temporary disability benefits, (2) functional permanent partial disability, (3) loss of earning capacity, and (4) medical expenses for

3

both unpaid medical expenses and subrogation interests. R. 4-4, pp. 114-115. Ryan's employer and its insurer, West Bend Mutual Insurance Company ("West Bend"), responded to his claim, denying that Ryan had suffered a compensable injury, the nature and extent of disability, and the reasonableness and necessity of medical expenses. R. 4-4, p. 115.

Prior to the anticipated hearing with the Office of Workers' Compensation Hearings ("OWCH"), Ryan's claim was quantified as comprised of (1) $46,067.23 for disability for time missed from work, (2) $641,863.61 for permanent physical disability and loss of earning capacity, and (3) $1,073,847.30 for unpaid medical expenses and subrogation interests. R. 4-4, p. 117-18

During the pendency of Ryan's workers' compensation claim, the mortgage holder on Ryan's home commenced a foreclosure action, and in September of 2019, the Circuit Court of Racine County entered an order for the foreclosure sale of Ryan's home. R. 4-4, p. 118; R. 4-4, p. 207. Ryan sought to resolve his workers' compensation claim as quickly as possible, so that he might cure the arrears on his mortgage and keep his home. Id.

Ryan's attorney, Richard Fortune, engaged the various unpaid medical providers and subrogated health insurers in an attempt to resolve their balances, and improve the chances of resolving Ryan's workers'

4

compensation claim, but the medical providers were unwilling to discount their balances in an amount sufficient to allow the Debtors to also cure their mortgage arrears. R. 4-4, p. 134-135.

Ryan ultimately agreed to settle his claim, and on August 27, 2019 entered into a full and final compromise agreement ("Compromise Agreement") with Ryan's employer and West Bend for a total payment of $550,000, bifurcated into two payments: a lump sum payment of $150,000 to Ryan, which would allow Ryan to cure the arrearage on his mortgage, and a payment of $400,000 which was placed into the Trust Account of FMSC. The Compromise Agreement provided in the relevant part:

> [T]he Employer and Insurer will pay as follows: $150,000 to Rodney Ryan, minus attorney fees and costs listed below; $400,000 to the Trust Account of Fortune & McGillis for disbursement to medical providers and lienholders, it being understood that from any balance remaining Mr. Ryan shall receive 80% and Fortune & McGillis shall receive 20%; in addition, the Respondents will fund a Medicare Set-Aside [….]

R 4-4, p. 39. Under the Compromise Agreement, Ryan's employer and West Bend denied all liability on Ryan's claim. R. 4-4. p. 38.

On September 17, 2021, the Compromise Agreement was approved by OWCH Administrative Law Judge Donald J. Doody ("OWCH Order"). R. 4-7, p. 25-26.

On October 11, 2019, the Debtors filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Wisconsin. R. 4-7, p. 1-7. In their schedules, the Debtors listed Plaintiff Branko Prpa, M.D., LLC ("Plaintiff" or "Prpa") as having a claim in the amount of $445,684.00 for "Medical Services". R. 4-3, p. 25. In their Schedules filed with the Bankruptcy Court, Debtors disclosed an asset of a "Workers Compensation Settlement: $110K BMO Harris Account-Funds Not Comingled with any other money. $320K in Worker's Comp Attorney Richard Fortune's Trust Account. Medicare set aside account to pay medical bills moving forward for Mr. Rodney's medical care ($271,000) and later amended to change the amount in Richard Fortune's Trust Account to $400K, for a total of $781,000.00. R. 4-3, p. 9 and R. 4-7, p. 32. The Debtors claimed the amounts received in the Compromise, in the total amount of $781,000.00, as exempt pursuant to Wis. Stat. § 102.27. R. 4-3, p. 11 and R. 4-7, p. 35. Prpa objected to the Debtors' claimed exemption in the settlement funds on December 16, 2019. R. 4-2, p. 3 and R. 4-3, p. 60-64.

On December 16, 2019, Prpa filed an adversary proceeding Complaint with the Bankruptcy Court against the Debtors and FMSC seeking a declaratory judgment that the settlement funds held in FMSC's trust account were not property of the estate because the Compromise Agreement created

an express trust for the benefit of medical providers or in the alternative, for the Bankruptcy court to impose a constructive trust over the settlement funds in favor of medical providers. R. 4-7, p. 14-22. FMSC filed an answer to the Complaint on January 15, 2020, and the Debtors filed an answer on January 17, 2020. R. 4-1, p. 3 and R. 4-4, p. 25-33.

On January 22, 2020, the Bankruptcy Court granted the Debtors a discharge pursuant to 11 U.S.C. § 727. R. 4-3, p. 70.

On June 24, 2020, Prpa filed a motion for summary judgment on his adversary claims. R. 4-1, p. 5. The Bankruptcy Court held a hearing on the motion for summary judgment on September 9, 2020. R. 4-1, p. 6. On September 24, 2020, the Bankruptcy Court requested the parties file supplemental briefs on how Wis. Stat. § 102.26(3)(b)(2) affected their positions that the $400,000 was or was not property of the estate. R. 4-1, p. 6.

On March 24, the Bankruptcy Court issued its Decision on Plaintiff's Motion for Summary Judgment and Objection to Debtors' Claim of Exemptions, R. 4-3, p. 77-107, and decided that (1) the Compromise Agreement created an express trust in favor of the Debtors' medical providers, (2) that Wis. Stat. §102.27 did not preclude a trust in favor of creditors in a Debtors' workers' compensation settlement proceeds, (3) that a constructive trust in favor of the medical providers was warranted, and (4) that the Debtors'

remainder interest in the settlement funds was insufficient to bring the proceeds into property of the estate. R. 4-3, p. 106-107.

## SUMMARY OF ARGUMENT

This case turns on the interpretation of Wis. Stat. § 102.27(1), which provides: "[N]o claim for compensation shall be assignable, but this provision shall not affect the survival thereof; nor shall any claim for compensation, or compensation awarded, or paid, be taken for the debts of the party entitled thereto." Wis. Stat. § 102.27(1). The Defendants contend that this statute protects all compensation to which Ryan was entitled from being taken to pay his debts, including the $400,000 which the Compromise Agreement and OWCH Order ordered to be deposited in FMSC's trust account "for distribution to medical providers and for disbursement to medical providers and lienholders, it being understood that from any balance remaining Mr. Ryan shall receive 80% and Fortune & McGillis shall receive 20%" R. 4-4, p. 39.

The Bankruptcy Court's erroneous interpretation of Wis. Stat. § 102.27(1) serves as the underpinning of its entire decision. The Bankruptcy Court reads Wis. Stat. § 102.26(3)(b), a section that permits an administrative law judge to order direct payment of certain expenses out of an award rather than directly to the claimant, but only upon the claimant's request, as creating

8

separate classifications of compensation, some of which a claimant is not the person "entitled thereto," even were, as here, the claimant's claim was resolved in a Compromise Agreement that admitted no liability. R. 4-3, p. 101. This interpretation conflicts the goals of workers' compensation law and produces absurd results, and thus cannot be correct. Nevertheless, the Bankruptcy Court relies on the statute to conclude that an express trust in favor of creditors can be created over the $400,000 (R. 4-3, p. 101), that a constructive trust is warranted over the $400,000 if an express trust was not created (R. 4-3, p. 104-105) and that the Debtors lacked sufficient equitable interests in the $400,000 for the funds to constitute property of the estate (R. 4-3, p. 105-106).

The Compromise Agreement and OWCH Order do not create an express trust over the $400,000. The creation of a trust turns on the intentions of the parties, and an express trust requires a trustee who manages property for the benefit of a beneficiary, a beneficiary to whom the trustee owes equitable duties, and trust property to be managed by the trustee. Whether an express trust is created turns not on the language used, but on the characteristics of the relationship between the parties, and their intent. None of the parties to this case intended to create a trust in favor of the medical providers and lienholders, nor does anything about the OWCH Order suggest

9

a trustee relationship between FMSC and the medical providers. Such a relationship is impossible, because it would conflict with FMSC's representation of the interests of its client, and because both Ryan and FMSC had significant equitable interests in the funds alleged to be held in trust. Furthermore, Wis. Stat. § 102.27(1) precludes such a trust, as such a trust would have the effect of taking compensation for the debts of Ryan, who is the person entitled thereto.

Similarly, because the $400,000 is compensation to which Ryan is entitled pursuant to § 102.27(1), a constructive trust is not warranted. A constructive trust requires that the party holding the property would be unjustly enriched, and that some wrongful conduct such as fraud, duress, abuse of a confidential relationship, mistake, commission of a wrong, or any form of unconscionable conduct was used to obtain title to the property. Ryan would not be unjustly enriched by retaining compensation to which he is entitled, and the only "wrongful conduct" that the Bankruptcy Court could identify was the Defendants supposed mistake about the scope of Wis. Stat. § 102.27(1). R. 4-3, pp. 104-105. Therefore, because the Bankruptcy Court erroneously interpreted Wis. Stat. §102.27(1), its decision on constructive trust cannot be sustained.

Finally, the Bankruptcy Court held that Ryan did not have a sufficient equitable future interest in the $400,000, but it did so specifically because under its prior conclusions that the property was held in trust for the benefit of the medical providers and lienholders, such an equitable interest could only arise after "'disbursement to medical providers and lienholders' had been accomplished." R. 4-3, p. 105-106. Because there can be no trust in favor of the medical providers and lienholders, Ryan's equitable interest is not a mere equitable future interest; rather he has an equitable interest in the funds sufficient to bring the entire amount within the bankruptcy estate.

## **ARGUMENT**

### I.  **THE COMPROMISE AGREEMENT AND OWCH ORDER DID NOT CREATE AN EXPRESS TRUST IN FAVOR OF MEDICAL PROVIDERS.**

The language of the Compromise Agreement and OWCH Order does not establish an express trust. The relevant portion of the Compromise Agreement states:

> [T]he Employer and Insurer will pay as follows: $150,000 to Rodney Ryan, minus attorney fees and costs listed below; $400,000 to the Trust Account of Fortune & McGillis for disbursement to medical providers and lienholders, it being understood that from any balance remaining Mr. Ryan shall receive 80% and Fortune & McGillis shall receive 20% [....]

R. 4-4, p. 39. The OWCH Order similarly provided:

> Within 21 days from the date of this order, the respondent and insurance carrier shall pay to the applicant, Rodney Lee Ryan, the sum of One hundred twenty thousand dollars ($120,000.00); to the applicant's

11

> attorney, Richard A. Fortune, the sum of Thirty thousand dollars ($30,000.00) as fees; and to the Trust Account of Fortune & McGillis SC, the sum of Four hundred thousand dollars ($400,000.00) for disbursement to medical providers and lienholders, it being understood that from any balance remaining the applicant, Rodney Lee Ryan, shall receive 80 percent and Fortune & McGillis SC shall receive 20 percent.

R. 4-7, p. 26. The party asserting the existence of a trust bears the burden of demonstrating the existence of a trust. *In re Associated Enterprises, Inc.*, 234 B.R. 718, 720 (Bankr. W.D. Wis. 1999). Property interests are created and defined by state law. *Butner v. United States*, 440 U.S. 48, 55 (1979). Therefore, Wisconsin law governs whether the Compromise Agreement and OWCH Order created an express trust.

The Bankruptcy Court identified three elements that are necessary under Wisconsin law for the creation of a trust: (1) a trustee, who holds property and is subject to duties to deal with it for the benefit of another, (2) a beneficiary, to whom the trustee owes equitable duties to deal with trust property for its benefit, and (3) trust property, which is held by the trustee for the beneficiary. R. 4-3, p. 89 (citing *Associated Enterprises*, 234 B.R. at 721). The Bankruptcy Court determined that, based on the text of the OWCH order, each of these three elements was met: FMSC was trustee, the medical providers and lienholders were the beneficiaries, and the $400,000 was the trust property to be held by FMSC for the benefit of the medical providers and lienholders. R. 4-3, p. 92-93.

Whether a trust is created "depends not so much on the language used, as on the characteristics and purposes of the relationship." *In re Mueller Travel Agency, Inc.*, 56 Wis. 2d 207, 212 201 N.W.2d 589 (Wis. 1972). Thus, even language that may suggest the creation of a trust relationship is insufficient to create an express trust, absent evidence of intent. *See Otjen v. Frohbach*, 148 Wis. 301, 134 N.W. 832, 835 (1912) ("A trust may be created without the use of the words "trust" or "trustee," and, on the other hand, the use of the words "trust" or "trustee" do not necessarily show an intention to create or declare a trust.").

The Bankruptcy Court noted three circumstances where courts will find the existence of a trust: "when a statute defines a relationship as a trust, when the relationship has the typical attributes of a trust or when the contract expressly creates a trust. R. 4-3, p. 93-94 (citing *Venne v. Lenk (In re Lenk)*, 44 B.R. 814, 816 (Bankr. W.D. Wis. 1984)). None of these situations is present in this case. There is no statute which creates a trust, the OWCH order does not expressly create a trust, and the relationship between FMSC and the medical providers with respect to the $400,000 lacks the typical attributes of a trust.

*Lenk* was a case where a debtor used exempt homestead funds to pay a deposit to the Wisconsin Department of Transportation pursuant to the Wisconsin Financial Responsibility Law after the debtor's son was in an accident driving the family's uninsured car, and following her bankruptcy attempted to claim an exemption in the

13

deposit. *Lenk*, 44 B.R. at 815. The court in that case determined that, though the Wisconsin Financial Responsibility Law statute did not expressly use the word trust or similar language, the deposit was a statutory trust, with the Department of Transportation as trustee, the deposit being the trust property, and the plaintiffs in the automobile accident lawsuit as the beneficiaries. *Id.* at 816-17.

However, the *Lenk* case actually supports a determination that the OWCH Order did not create an express trust. In *Lenk*, the court found that a trust had been created because (1) the debtor had no control over the funds once they had been deposited, (2) the Department of Transportation held the funds for a single purpose, the benefit of the plaintiffs, and (3) the debtor had no legal or equitable interest in the funds, unless there was a determination of no liability in the state court lawsuit. *Id.* at 816-17.

Here, the Debtors and FMSC had significant, direct, and total control over the funds, including but not limited to, disbursement; the OWCH Order did not direct payment to any of the specific medical providers or lienholders, nor did it order any specific amounts to be paid. *See* R. 4-7, p. 26. Absent any specific direction, and with medical expenses more than double the $400,000 provided in the Compromise Agreement (*See* R. 4-4, p. 244-45), the Debtors and FMSC were in the position to settle with the medical providers in whatever manner they saw fit. The total medical bills were $1,073,847.30, Prpa's claim was $445,684.00, that is 41.5% of the total

medical claims, and more than the $400,000 amount awarded to pay all medical claims. In addition, the debtor in *Lenk* had no interest in its deposited funds unless there was a finding of no liability in the state court lawsuit. *Lenk*, 44 B.R. at 816. Here, both the Debtors and FMSC had real interest in the funds. FMSC had control over the account holding the funds, and Ryan had the rights of a client over funds held in an attorney's trust account. By the OWCH Order, FMSC and Ryan were entitled to 80% and 20% respectively of any remaining balance of the funds, following whatever payments to medical providers and lienholders they chose to make. R. 4-7, p. 26. Furthermore, because this case was resolved in a compromise (meaning that the Employer and Insurer were able to settle without admitting liability), there were no findings of fact about the amount of any of the medical providers' claims, and thus no direction from OWCH to pay any specific amounts to medical providers. R. 4-8, pp. 4-7.

Another important distinction is that in *Lenk*, a disinterested third-party (the Department of Transportation) was to take on the role of Trustee. *Lenk*, 44 B.R. at 816. It would be a patent conflict of interest for FMSC to administer funds for the benefit of its client's creditors, particularly where both FMSC's and the Debtors' compensation interest was plainly adverse to the interests of the supposed trust beneficiaries. *See French v. Wachovia Bank, Nat. Ass'n*, 800 F. Supp. 2d 975, 985 (E.D. Wis. 2011), aff'd sub nom. *French v. Wachovia Bank*, N.A., 722 F.3d 1079

(7th Cir. 2013) ("The rule of "undivided loyalty" requires that a trustee "must neither deal with trust property for the benefit of himself nor place himself in a position inconsistent with the interests of the trust.") (quoting *In re Hanes*, 214 B.R. 786, 814 (Bankr. E.D. Va. 1997). The Bankruptcy Court pointed to the Wisconsin Rules of Professional Responsibility regarding attorney trust accounts, Wis. S.C.R. 1.15(b)(1), which provides "A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation," to support its conclusion that FMSC was trustee of the $400,000 deposited in its trust account. R. 4-3, p. 92. However, that simply exemplifies the glaring issue: according to the Bankruptcy Court's express trust theory, FMSC was required to hold the $400,000 in trust for the benefit of both the medical providers and lienholders *and* his client, whose interests are directly adverse. Because the Ryans have legal and equitable interests in the compromise funds, and because FMSC could in no way properly serve as trustee over such funds, it is clear that the parties did not intend to create an express trust in favor of creditors, nor did the OWCH Order establish one.

## II. WIS. STAT. § 102.27 PRECLUDES THE CREATION OF A TRUST IN FAVOR OF CREDITORS.

Wis. Stat. § 102.27 precludes the creation of an express trust over the compromise award. Subject to inapplicable exceptions, Wis Stat. § 102.27(1) provides that:

(1)  … no claim for compensation shall be assignable, but this provision shall not affect the survival thereof; nor shall any claim for compensation, or compensation awarded, or paid, be taken for the debts of the party entitled thereto.

Wis. Stat. § 102.27. When interpreting statutory language, the court's analysis begins with the language of the statue, which is generally given its common, ordinary, and accepted meaning. *State ex rel. Kalal v. Cir. Ct. for Dane Cty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. The plain language of this statute protects all funds awarded in the OWCH Order from Ryan's creditors, including medical providers. Ryan, being the only party with standing to bring a claim for workers' compensation is the only party "entitled thereto" within the meaning of the statute. *See La Crosse Lutheran Hosp. v. Oldenburg*, 73 Wis. 2d 71, 75, 241 N.W.2d 875, (1976) (holding that an unpaid medical provider cannot sue an employer or its workers' compensation insurer to collect its unpaid balance for treatment of an injured employee).

The Bankruptcy Court erroneously interpreted Wis. Stat. § 102.26(3). *See* R. 4-3, p. 97. That statute provides:

(2) Except as provided in par. (b), compensation exceeding $100 in favor of any claimant shall be made payable to and delivered directly to the claimant in person.

(3) 1. Subject to sub. (2), upon application of any interested party, the department or the division may fix the fee of the claimant's attorney or representative and provide in the award for that fee to be paid directly to the attorney or representative.

2. At the request of the claimant medical expense, witness fees and other charges associated with the claim may be ordered paid out of the amount awarded.

Wis. Stat. § 102.26(3). That statute merely states that while the general rule in workers' compensation is that all compensation is paid directly to the claimant, the claimant may request that the specific charges, including medical expenses to specific providers, be paid directly out of the award; it does not define separate categories of payment, some of which are not "compensation to which the employee claimant is entitled" as the Bankruptcy Court asserted. R. 4-3, p. 97.

The Bankruptcy Court erroneously held that the $400,000 was not compensation to which Ryan was entitled pursuant to Wis. Stat. § 102.27, and that the only portion of the compromise amount which Ryan could protect pursuant to Wis. Stat. § 102.27 was the $120,000 paid directly to him. R. 4-3, p. 98-99. Section 102.26(3) permits an OWCH order to provide for specific payments directly to specific claimants, for the convenience of the claimant. Furthermore, the fact that the OWCH Order specifically contemplated that Ryan would be entitled to 80% of any balance remaining following any disbursements to medical providers and lienholders, at R. 4-7, p. 26, indicates that the $400,000 is compensation to which Ryan is entitled. Regardless of the likelihood that any balance would remain following disbursements to medical providers and lienholders, the OWCH Order

plainly provided that Ryan was entitled to whatever amount of the $400,000 which remained after the satisfaction or discharge of the medical providers and lienholders.

The Court's reading of §§ 102.26(3) and 102.27(1) effectively turns the medical provider into the "party entitled thereto" under § 102.27(1). The statute merely says that "compensation awarded" shall not be taken "for the debts of the party entitled thereto." Wis. Stat. § 102.27(1). Under the Bankruptcy Court's interpretation, medical providers that receive compensation provided for in an OWCH award would be protected from the medical providers' creditors because they would be the parties entitled thereto. This is a plainly absurd result, which the legislature could not have intended when enacting Wisconsin's workers' compensation law. "The policy of the State of Wisconsin [is] that worker's compensation benefits could not be taken to pay medical expenses, or for that matter, any of the debts or expenses of the party entitled to those benefits…" *In re Brien*, 128 B.R. 220, 223–224 (Bankr. E.D. Wis. 1991).

The Bankruptcy Court's interpretation of Wis. Stat. § 102.27(1) was erroneously colored by the irrelevant Wis. Stat. § 102.26(3), which led it to the conclusion that the $400,000 provided in the Compromise Agreement was not compensation to which Ryan was entitled, and thus was not protected under Wis. Stat. § 102.27(1). Wis. Stat. § 102.26(3) does not create different classifications of payments to which a claimant is not entitled, it merely authorizes an order to deviate

19

from the general rule that all compensation awarded must be paid directly to the claimant, should the claimant so request. A plain reading of § 102.27(1) and the OWCH Order can lead to only one result: the $400,000 is compensation and Ryan is the "party entitled thereto." The statute plainly mandates that the compensation may not be taken by Ryan's creditors, nor may it be placed in a trust for the benefit of such creditors.

## III.  A CONSTRUCTIVE TRUST IS NOT WARRANTED.

A constructive trust "is an equitable device created by law to prevent unjust enrichment, which arises when one party receives a benefit, the retention of which is unjust to another." *Wilharms v. Wilharms*, 93 Wis. 2d 671, 678, 287 N.W.2d 779 (1980). A constructive trust is a limited remedy, and mere unjust enrichment is not sufficient to warrant a constructive trust. *Id.* at 678-679. Rather, there must also be some wrongful conduct, meaning "actual or constructive fraud, duress, abuse of a confidential relationship, mistake, commission of a wrong, or […] any form of unconscionable conduct." *Id.*

The Defendants were neither unjustly enriched, nor was there any wrongful conduct to warrant the imposition of a constructive trust. The Bankruptcy Court concluded that the unjust enrichment prong was met because, based on its interpretation of §§ 102.26(3) and 102.27(1), the $400,000 was not compensation to which Ryan was entitled, and therefore the Defendants wrongfully maintained

control over the funds, despite the OWCH Order's directive to disburse the funds to medical providers constituted unjust enrichment. R. 4-3, pp. 103-104. This conclusion, however, relies on the Bankruptcy Court's erroneous interpretation of §§ 102.26 and 102.27 which excluded the $400,000 from Ryan's compensation. As discussed above, the $400,000 is compensation to which Ryan is entitled.

The Bankruptcy Court found that the additional wrongful conduct element necessary to impose a constructive trust was met by the Defendants' "erroneous conclusion of law" in interpreting Wis. Stat. § 102.27(1) as shielding the $400,000 from creditors. R. 4-3, pp. 104-105. (citing *Dubis v. Zarins (In re Teranis)*, 128 F.3d 469, 473 (7th Cir. 1997) (holding that mistake can be a basis for imposition of a constructive trust where property is not conveyed despite a grantor's intention to convey)). *Also see Matter of Stiennon*, 73 B.R. 905, 906 (Bankr. W.D. Wis. 1987) (holding that the party requesting a constructive trust has the burden of proving by at least a preponderance of the evidence the necessary elements of unjust enrichment and wrongful or unconscionable conduct.) As with the unjust enrichment prong of the constructive trust analysis, the Bankruptcy Court's conclusion relies on its erroneous interpretation of Wis. Stat. § 102.27(1). If the Defendants' position is correct that the $400,000 compensation to Ryan is protected from his creditors pursuant to Wis. Stat. § 102.27(1), then there is no mistake or other wrongful conduct that would warrant the imposition of a constructive trust. Furthermore, the

Bankruptcy Court ignored FMSC's attempts to negotiate payment of Ryan's medical expenses. *See*, R. 4-4, pp. 134-135. The Bankruptcy Court erred in finding that a constructive trust was created.

## IV. THE DEBTORS HAVE AN INTEREST IN THE COMPROMISE FUNDS SUFFICIENT TO BRING THE FUNDS WITHIN PROPERTY OF THE ESTATE.

The Debtors have an interest in the $400,000 sufficient for the funds to be property of their bankruptcy estate. A bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). However, property in which the debtor holds only legal title and not an equitable interest, such as an interest as a servicer of a mortgage, is only property of the estate to the extent to the debtor's legal title in the property. 11 U.S.C. § 541(d). Relying on § 541(d), the 7th Circuit Court has found that when a debtor receives money as a trustee, it receives only bare legal title, and maintains no equitable interest in those proceeds and as a result, such monies are not included in the debtor's bankruptcy estate. *In re Marrs-Winn Co., Inc.*, 103 F.3d 584, 589 (7th Cir. 1996). But Ryans did not receive the money as trustee of the funds.

As explained above, the Bankruptcy Court's conclusion that the $400,000 is property held in trust for the benefit of medical providers is based on an erroneous interpretation of Wisconsin workers' compensation statutes and of the OWCH Order. The Debtors do have an equitable interest in the $400,000 that is property of

22

their bankruptcy estate. *See Matter of Stiennon*, 73 B.R. 905, 906 (Bankr. W.D. Wis. 1987) (holding that client funds in an attorney's trust account are property of the bankruptcy estate). Ryans hold an equitable interest in the money in the FMSC trust account. "Absent an exception to section 541, there can be no question that the trust funds were included in the debtor's bankruptcy estate." *Id.* at 906. No exception is applicable to the funds at issue.

## CONCLUSION

The funds awarded by the OWCH Order and held in the FMSC trust account are property of Ryans' bankruptcy estate and exempt pursuant to Wis. Stat. § 102.27(1). The Bankruptcy Court Order holding otherwise should be overturned.

Dated this 7th day of June 2021.

> **STEINHILBER SWANSON LLP**
> Attorneys for Appellants
>
> By: */s/ Claire Ann Richman*
> Claire Ann Richman
> Colton J. Chase
> 122 W. Washington Ave., Suite 850
> Madison, WI 53703-2718
> Tel: (608) 630-8990
> Fax: (608) 630-8991
> crichman@steinhilberswanson.com
> cchase@steinhilberswanson.com

23

# CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF BANKRUPTCY PROCEDURE 8015

This brief complies with Federal Rule of Bankruptcy Procedure 8015(a)(7)(B)(i) by virtue of the fact that the content subject to the limitations of that provision consists of 5,405 words (said number being fewer than the 13,000 permitted) typed in a proportionally spaced font.

This brief complies with the typeface requirements of Federal Rule of Bankruptcy Procedure 8015(a)(5) and the type-style requirements of Federal Rule of Bankruptcy Procedure 8015(a)(6) by virtue of the fact that it was prepared using Microsoft Office Word 365 and typed in fourteen-point Times New Roman font.

 Dated this 7th day of June 2021.

**STEINHILBER SWANSON LLP**
Attorneys for Appellants

By: */s/ Claire Ann Richman*
Claire Ann Richman
Colton J. Chase
122 W. Washington Ave., Suite 850
Madison, WI 53703-2718
Tel: (608) 630-8990
Fax: (608) 630-8991
crichman@steinhilberswanson.com
cchase@steinhilberswanson.com

24