# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

In re:

Rodney Ryan and           Bankruptcy Case No. 19-29833-beh
Jill Ryan,                     Chapter 7

               Debtors.

Rodney and Jill Ryan, and
Fortune & McGillis, S.C.,

         Defendants-Appellants,

vs.                     Dist. Ct. Case No. 2:21-cv-00449-BHL
                        Bankruptcy Adv. Case No. 19-02209

Branko Prpa MD LLC

         Plaintiff-Appellee.

---

Appeal from the United States Bankruptcy Court
for the Eastern District of Wisconsin
Bankruptcy Case No. 19-29833
Adversary Case No. 19-02209

---

# REPLY BRIEF OF APPELLANTS
# RODNEY RYAN, JILL RYAN,
# AND FORTUNE & MCGILLIS, S.C.

---

**STEINHILBER SWANSON, LLP**
*Attorneys for Debtors/Defendants/Appellants*
Claire Ann Richman
Colton J. Chase
122 W. Washington Ave., Suite 850
Madison, WI 53703-2718
Tel: (608) 630-8990/Fax: (608) 630-8991
crichman@steinhilberswanson.com
cchase@steinhilberswanson.com

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................... ii

TABLE OF AUTHORITIES ................................................... iii

ARGUMENT .......................................................................1

  I.  FMSC and Attorney Fortune Have Standing to Pursue This Appeal. ............1

  II.  Appellee Attempts to Mischaracterize Appellants' Arguments in Order to Claim that Appellants Waived Certain Issues. ................................................3

  III.  The Bankruptcy Court Erred in Holding that the OWCH Order Created an Express Trust. .......................................................................6

  IV.  Appellee Mischaracterizes Appellants' arguments relating to Wis. Stat. § 102.27 by Claiming That any Party to Which Moneys can be Paid Pursuant to the Worker's Compensation Act is a "Party Entitled Thereto." .................9

  V.  The Bankruptcy Court Erred in Concluding That There are Grounds for the Imposition of a Constructive Trust. .............................................................13

CONCLUSION .....................................................................17

Case 2:21-cv-00449-BHL   Filed 07/21/21   Page 2 of 23   Document 11

# TABLE OF AUTHORITIES

**Cases**

*Cult Awareness Network, Inc. v. Martino (In re Cult Awareness Network, Inc.)*,

    151 F.3d 605, 607 (7th Cir. 1998). ..........................................................................1

*Huml v. Vlazny*, 2006 WI 87, ¶ 52, 293 Wis. 2d 169, 716 N.W.2d 807...................5

*In re Bake-Line Group, LLC*, 359 B.R. 566, 575 (Bankr. D. Del. 2007) ...............15

*In re Brien*, 128 B.R. 220, 223–224 (Bankr. E.D. Wis. 1991) ...............................10

*In re DuPage Boiler Workers, Inc*., 965 F.2d 296, 297 (7th Cir. 1992)...................1

*In re Stiennon*, 73 B.R. 905, 906 (Bankr. W.D. Wis. 1987).....................................7

*State ex rel. Kalal v. Cir. Ct. for Dane Cty.*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633,

    681 N.W.2d 110...................................................................................................11

*Town Bank v. City Real Estate Dev.,* LLC 2010 WI 134, ¶ 33, 330 Wis. 2d 340,

    783 N.W.2d 476....................................................................................................5

*Wilharms v. Wilharms*, 93 Wis. 2d, 671, 678, 287 N.W.2d 779 (1980).................13

**Statutes**

11 U.S.C. § 541(a)(1)...............................................................................................9

Wis. Stat. § 102.01(2)(am).......................................................................................9

Wis. Stats. § 102.26 ...............................................................................................12

Wis. Stat. § 102.26(3) ............................................................................................11

Wis. Stat. § 102.26(3)(b).........................................................................................17

Case 2:21-cv-00449-BHL   Filed 07/21/21   Page 3 of 23   Document 11

Wis. Stat. § 102.27 ........................................................................... passim

Wis. Stat. § 102.27(1) ...................................................................... 10, 14

Wis. Stat. § 102.47 ..............................................................................10

Wis. Stat. § 102.475 ............................................................................10

Wis. Stat. § 102.48 ..............................................................................10

Wis. Stat. § 102.49 ..............................................................................10

**Other Authorities**

FINANCIAL INTEREST, Black's Law Dictionary (11th ed. 2019) ........................1

**ARGUMENT**

**I.      FMSC and Attorney Fortune Have Standing to Pursue This Appeal.**

Appellee argues that Appellants FMSC[1] and Attorney Richard Fortune

("Fortune") lack standing to appeal the Bankruptcy Court's Orders. Brief of

Appellee Branko Prpa MD LLC ("Appellee Brief"), p. 7 [Dkt 10]. Fortune, in his

personal capacity is not a party to this appeal, nor was he a named defendant in the

Adversary Proceeding. Appellants do not assert that Fortune has standing to pursue

this appeal. Only parties who have a pecuniary interest in the outcome of a

bankruptcy proceeding have standing to appeal. *Cult Awareness Network, Inc. v.*

*Martino (In re Cult Awareness Network, Inc.)*, 151 F.3d 605, 607 (7th Cir. 1998). A

party has standing to appeal a bankruptcy court order if that party can demonstrate

"that the order diminishes the person's property, increases the person's burdens, or

impairs the persons rights*." In re DuPage Boiler Workers, Inc*., 965 F.2d 296, 297

(7th Cir. 1992). A "pecuniary interest" is a "financial interest", defined as "An

interest involving money or its equivalent…" FINANCIAL INTEREST, Black's

Law Dictionary (11th ed. 2019)

FMSC's financial/pecuniary interest in its IOLTA Account and possible

compensation therefrom are affected by the Bankruptcy Court's Orders. Pursuant to

---

[1] All defined terms shall have the same meaning as given in the Brief of Appellants Rodney
Ryan, Jill Ryan, and Fortune & McGillis, S.C. [Dkt 9] unless defined otherwise in this brief.

1

the Bankruptcy Court's Orders, FMSC is deemed to be a trustee overseeing the disbursal of $400,000 to medical providers and lienholders of the Debtors. *See* R. 4-3, p. 95. Appellee is far from the only medical provider that, under Appellee's theory of the case, is entitled to a share of the $400,000 held in the IOLTA Account. Debtors' Schedule E/F lists an additional $426,044.00 of medical claims alone against the Debtors beyond Appellee's claim, all with the same position as Appellee. R. 4-3, pp. 15-33. FMSC would be heavily burdened by the requirement that it disburse these IOLTA funds to only Prpa, particularly if it owes fiduciary duties to all medical providers and lienholders. Even without a fiduciary obligation, asserting that the funds go to only one creditor when other creditors have and are making claims to the funds, is burdensome. This burden is sufficient to establish that FMSC has standing to pursue this appeal, without even considering the possibility that FMSC may receive any portion of the $400,000.

Furthermore, it is Appellee that commenced the underlying Adversary Proceeding by suing FMSC and the Debtors; it seems absurd that they now assert that FMSC lacks standing to appeal an order entered against it. In any event, Appellee does not appear to challenge that the Debtors have standing to appeal the Orders, so it is unclear what practical effect, if any, a finding that FMSC lacks standing  would have on the resolution of this Appeal. And the effect would create

an implausible situation regarding funds in FMSC's IOLTA Account, and FMSC's and its members ethical obligation regarding the funds held in that IOLTA Account.

## II.  Appellee Attempts to Mischaracterize Appellants' Arguments in Order to Claim that Appellants Waived Certain Issues.

Appellee consistently attempts to mischaracterize Appellants' arguments to assert that they have waived their issues on appeal. With respect to constructive trust issues, Appellee claims that Appellants "only address the interpretation of Wis. Stat. § 102.27" and therefore "have waived any arguments against the imposition of a constructive trust based on alternative grounds." Appellee Brief, p. 23, n.10. This argument ignores the substance of Appellants' argument: that the Bankruptcy Court could not find that the elements of constructive trust were met because its conclusion necessarily fails in the face of the correct interpretation of Wis. Stat. § 102.27. *See* Appellant Brief, p. 20-22.

Appellee further argues that the parties abandoned any argument that the OWCH Order did not create an express trust. Appellee Brief, p. 27. In the briefing below, Appellants have always taken the position that no express trust was created. *See* R. 4-4, p. 127; R. 4-4, p. 236. Appellants' arguments with respect to the OWCH Order are consistent: the most reasonable interpretation of the plain language of the OWCH Order is the one that does not bring it into direct conflict with Wis. Stat. § 102.27; the OWCH Order does not create an express trust for medical providers. Appellants have adequately analyzed and argued the text of the OWCH Order and

3

have not waived the argument that the OWCH Order did not create an express trust, neither before the Bankruptcy Court nor in this Appeal.

Appellee also argues that Appellants waived any argument that the Ryans' interest in the remainder of the $400,000 was sufficient to bring the funds within the property of the estate. Appellee Brief, p. 29. Before the Bankruptcy Court, Appellants counsel addressed Appellee's arguments that the Debtors did not have sufficient interest in the $400,000 to bring them within property of the estate. *See e.g.*, R. 4-4, p. 123-24; R. 4-4, p. 230-33. Appellants in their brief similarly argue that Appellants' interest in the $400,000 in any form is sufficient to bring the funds within the bankruptcy estate. Appellant Brief, pp. 22-23.

Appellee then claims that Appellants waived any argument that the OWCH Order was ambiguous, and further asserts that this represents a reversal of Appellants' position below. Appellee Brief, p. 31. Appellants are not arguing that the OWCH Order's text is ambiguous; rather, Appellants have taken the position that the Bankruptcy Court's interpretation of the plain language was in error. *See* Appellant Brief, pp. 13-16. Appellee further mischaracterizes Appellants' argument by claiming "Appellants focus on facts ***outside*** of the plain language – *e.g.*, the alleged intent of the parties, Attorney Fortunes "patent conflict of interest," and the alleged meaning of Wis. Stat. § 102.27." Appellee Brief, p. 31 (emphasis original). This is false. Appellants argued that the plain language of the OWCH Order could

not have created an express trust as the Bankruptcy Court determined because the Bankruptcy Court's interpretation produces unreasonable results. These unreasonable results are not facts "outside of the plain language," but evidence which demonstrates that the Bankruptcy Court's so called plain language reading was erroneous.

A contract is interpreted consistently with what a reasonable person would understand the words to mean under the circumstances. *Huml v. Vlazny*, 2006 WI 87, ¶ 52, 293 Wis. 2d 169, 716 N.W.2d 807. The best indication of the parties' intentions is the language of the contract. *Town Bank v. City Real Estate Dev.,* LLC 2010 WI 134, ¶ 33, 330 Wis. 2d 340, 783 N.W.2d 476. The most reasonable interpretation of the plain language of the OWCH Order demonstrates an intent to have Ryan and FMSC make disbursements as they saw fit. The parties to the OWCH Order knew that the medical expenses in this case greatly exceed $400,000, yet the Compromise Agreement still contemplated that there would be funds remaining to pay to Ryan and FMSC. R. 4-7, p. 26. This clearly demonstrates that the plain language of the OWCH Order expected Ryan and FMSC to exercise discretion in how disbursements would be made.

Appellants do not ask the Court to ignore the plain language of the OWCH Order as Appellee claims; Appellants only argue that the Court adopt the correct interpretation of the OWCH Order, which contemplates that Appellants would have

discretion to control disbursement of the $400,000, none of which converts FMSC into a trustee adverse to the interests of its own client.

In fact, Appellee's own position is not based on the plain text of the OWCH Order. The text of the OWCH order does not purport to name FMSC as trustee, nor to create an express trust, nor to direct FMSC to hold the $400,000 for the benefit of medical providers. Ultimately, Appellee's and the Bankruptcy Court's so-called plain language interpretations of the OWCH Order require that they read into the OWCH Order words that are simply not present in order to overcome the simple fact that the text does not establish an express trust. Appellants do not have to argue that the OWCH Order was ambiguous in order to take the position that the Bankruptcy Court's interpretation of the Order was in error.

## III. The Bankruptcy Court Erred in Holding that the OWCH Order Created an Express Trust.

The Bankruptcy Court erred in holding that the OWCH Order created an express trust in favor of medical providers. Appellee attempts to frame Appellants' arguments as internally inconsistent describing them as saying:

> (1) the OWCH Order did not create an express trust but that the Disputed Funds are held in trust by FMSC for [Ryan's] benefit and (2) it would violate public policy for the OWCH Order to direct payment to creditors like medical providers and lienholders, but the OWCH Order can direct payment to Attorney Fortune and such payment was only ever Attorney Fortune's property.

6

Appellee Brief, p. 14. However, there is nothing inconsistent about these assertions beyond Appellee's own mischaracterizations. The OWCH Order did not create an express trust, and there is nothing problematic about the OWCH Order directing payment directly to Fortune.

Appellee begins by expressing its incredulity that Appellants could argue that FMSC holds the $400,000 in trust for its client Ryan, while also arguing that the OWCH Order does not establish an express trust. Appellee Brief, p. 13. However, Appellee overlooks the obvious: there is no need for the OWCH order to create an express trust in favor of Ryan because it specifically directed that the funds be deposited into FMSC's *trust account*. The OWCH Order instructed that the $400,000 would be deposited into the "Trust Account of Fortune & McGillis, SC", R. 4-7, p. 26. Moneys held in an attorney's trust account are held in trust expressly for the client. *In re Stiennon*, 73 B.R. 905, 906 (Bankr. W.D. Wis. 1987). The OWCH Order does not create an express trust in favor of Ryan because such a trust would be superfluous when the moneys were already being deposited into an account where they must be held in trust for Ryan's benefit.

Appellee also takes issue with the OWCH Order award of $30,000 directly to Fortune for attorney's fees. Appellee Brief, pp. 13-14. Appellee mischaracterizes Appellants' arguments and suggests that, in order to remain consistent, Appellants would have to argue that the $30,000 was property of the Debtors' bankruptcy estate,

or otherwise barred by Appellants' interpretation of Wis. Stat. § 102.27. Appellee Brief, p. 14. However, Appellee ignores the simple fact that the OWCH Order plainly directed the payment of $30,000 directly to Fortune. R. 4-7, p. 26. It is likely that this Appeal would not exist if the OWCH Order had specifically directed a sum certain amount to be paid directly to Appellee, but that is not the case we have here. Appellee regularly draws a comparison between the $30,000 paid to Fortune and the $400,000 deposited into FMSC's trust account, but the analogy is completely inapposite. While the OWCH Order directed $30,000 to be paid directly to Fortune, it makes no analogous instruction with respect to the $400,000 because Ryan and FMSC had discretion to disburse the funds as they saw fit.

Appellee even goes so far as to argue that Appellants have "no legal right to the Disputed Funds." Appellee Brief, p. 18. At that point, Appellee is ignoring the plain language of the OWCH Order, which provides that Ryan has a right to 80% of the balance of the $400,000.[2] R. 4-7, p. 25. The $400,000 was paid by Ryan's Employer to extinguish its potential worker's compensation liability; not, as Appellee claims, to extinguish the Employer's liability to any medical provider. *See* Appellee Brief, p. 18. The Compromise Agreement does not contain an admission of liability. R. 4-4, pp. 37-40. The $400,000 is compensation from the employer to

---

[2] Contrary to Appellee's bold assertion that "FMSC paid itself $80,000 from the IOLTA Account", no evidence supports this assertion and in fact is denied by FMSC. The $80,000 deducted from Debtors' schedules in the original filing was based upon the OWCH Order that Ryan had a right to 80% of the $400,000. Appellee Brief, p. 3

8

Ryan in consideration for agreeing to compromise his worker's compensation claim. Ryan has property rights in those funds, and they are protected under Wisconsin law from being taken by creditors. With narrow exceptions, none of which apply to the $400,000, property of a bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Certainly, Ryan had a legal or equitable interest in the funds held in the IOLTA Account.

## IV. Appellee Mischaracterizes Appellants' arguments relating to Wis. Stat. § 102.27 by Claiming That any Party to Which Moneys can be Paid Pursuant to the Worker's Compensation Act is a "Party Entitled Thereto."

The plain text of Wis. Stat. § 102.27 provides, in the relevant part:

> [N]o claim for compensation shall be assignable, but this provision shall not affect the survival thereof; nor shall any claim for compensation, or compensation awarded, or paid, be taken for the debts of the party entitled thereto.

Wis. Stat. § 102.27(1). Appellee never directly quotes the language of this statute and directs the Court to focus purely on the words "party entitled thereto" but it is important to read the whole statute in order to understand Appellants' argument.

In Chapter 102 of the Wisconsin statutes, the word "compensation" is defined as "worker's compensation." Wis. Stat. § 102.01(2)(am). Thus, the relevant portion of the statute may be read to say, "nor shall any claim for [worker's compensation], or [worker's compensation] awarded, or paid be taken for the debts of the party

9

entitled thereto. Wis. Stat. § 102.27(1). When viewed in its proper context, it becomes clear that under the plain text of Wis. Stat. § 102.27, a party entitled to worker's compensation may not have his worker's compensation taken to pay that party's debts. Appellee effectively asserts that any party that can be paid pursuant to a statute under the Worker's Compensation Act is a party "entitled thereto." *See* Appellee Brief, p. 19. Appellee is correct that there can be other parties that are entitled to worker's compensation, and to the protection of Wis. Stat. § 102.27, specifically dependents, surviving spouses, domestic partners, children, and surviving parents when a claim is for a death benefit. *See e.g.* Wis. Stat. §§ 102.47, 102.475, 102.48, 102.49. Wis. Stat. § 102.27 uses the words "party entitled thereto" rather than "employee" because it also seeks to protect those entitled to a death benefit as the successors to the decedent's interest in the worker's compensation claim. This interpretation is supported by the result in *In re Brien*, 128 B.R. 220, (Bankr. E.D. Wis. 1991), wherein a widow receiving a worker's compensation death benefit was protected by Wis. Stat. § 102.27. *In re Brien*, 128 B.R. at 224. Similar to the case at hand, *In re Brien* included a single lump-sum payment and no apportionment of any amount for medical providers. Here too, one lump sum was provided regarding medical payments owed by the Ryans that were at least twice as large as the single lump sum provided. Granting a request to distribute the $400,000 to Appellee still leaves the Ryans in a position with approximately a half million

10

dollars of debt, which they clearly cannot afford to pay, and justifies a good faith bankruptcy filing. Public policy should not support that Appellee can litigate to selfishly obtain the funds despite other creditor and in this case, a bankruptcy discharge. The proposed result of the Ryans having no legal or equitable interest in the $400,000 and it belonging to medical providers, including Appellee, leaves an unworkable inequitable result for all involved, except Appellee. All medical debt at issue was discharged in the Ryans' bankruptcy. R. 4-3, p. 70

To the extent Appellee argues that any creditor of a workers' compensation claimant can be a person "entitled thereto," its argument fails. Appellee and the Bankruptcy Court take the position that because the Worker's Compensation Act permits a claimant to request that an order pay medical expenses directly, Wis. Stat. § 102.26(3), such medical providers must also be "parties entitled thereto" within the meaning of Wis. Stat. § 102.27. This results in such an absurd and unreasonable result, that it cannot be the plain meaning of Wis. Stat. § 102.27. *See State ex rel. Kalal v. Cir. Ct. for Dane Cty.*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110 ("Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results."). If Appellee's and Bankruptcy Court's interpretation of the statute is correct, then any moneys that a medical provider receives pursuant to a worker's compensation order

could never be taken by its creditors, that is, those funds could never be garnished by a medical provider's creditor. Clearly this result is not the intent or plain language of this statute. The statute is to protect the claimant and other specifically protected parties connected to the claimant. One does not need to consult extraneous sources to see that the only reasonable reading of Wis. Stat. § 102.27, supported by its plain text, is that creditors may never be "parties entitled thereto" because they are never entitled to worker's compensation. While Appellee asserts that Appellants' argument relies on legislative intent and public policy arguments rather than the plain language of the statute, Appellee Brief, p. 20-21, in truth Appellants' argument is based on the plain language of the statute, seeking to demonstrate why the Bankruptcy Court's interpretation of that same language fails.

Appellee claims that Appellants have abandoned this argument for failure to argue that Wis. Stats. §§ 102.27 and 102.26 are ambiguous, Appellee Brief, p. 20. Appellants are not arguing that the statutes are ambiguous; rather, Appellants maintain that the Bankruptcy Court's interpretation of the plain meaning of these statutes and their relationship is fundamentally flawed, and the true plain meaning of the text of these statutes is represented by Appellant's interpretation. Appellants do not have to argue that the statutes are ambiguous in order to assert that the Bankruptcy Court's interpretation was in error.

12

**V.    The Bankruptcy Court Erred in Concluding That There are Grounds for the Imposition of a Constructive Trust.**

Once again, Appellee mischaracterizes Appellants' arguments, claiming that "Appellants [sic] only argument is that their interpretation of Wis. Stat. § 102.27 is correct, and therefore the Bankruptcy Court was mistaken that there was a mistake." Appellee Brief, p. 23. This is plainly incorrect. Appellants first argue that Ryan cannot be considered to have been unjustly enriched because the $400,000 included compensation to which Ryan was entitled. *See* Appellant Brief, pp. 20-21. Unjust enrichment arises when a party receives a benefit, the retention of which is unjust to another. *Wilharms v. Wilharms*, 93 Wis. 2d, 671, 678, 287 N.W.2d 779 (1980). The $400,000 awarded in the OWCH Order may include compensation in which Ryan has an interest, and there is nothing unjust about Ryan receiving that compensation. The OWCH Order plainly states that Ryan is entitled to 80% of any amount of the $400,000 remaining after any disbursements to medical providers and lienholders R. 4-7, p. 26.  Ryan's rights to those funds arise because the $400,000 is money that he is entitled to as worker's compensation, and which is specifically protected from his creditors by Wis. Stat. § 102.27. It does not belong to Appellee, and it is not owed to Appellee; rather, it is owed to, was paid for the benefit of and Ryan has at least a legal and equitable interest in the funds. There can be no constructive trust without unjust enrichment,  *See Wilharms*, 93, Wis. 2d at 678-79, and none of the Appellants would be unjustly enriched by the retention of the $400,000.

13

Furthermore, there was no mistake or any other wrongful conduct to warrant a constructive trust. The Bankruptcy Court found that the wrongful conduct at issue was Appellants' "erroneous conclusion of law" in interpreting Wis. Stat. § 102.27(1). R. 4-3, pp. 104-05. Appellee seems to argue that, even if Appellants' interpretation of Wis. Stat. § 102.27 is correct, if other parties operated under an erroneous interpretation of that statute, then there would still be mistake. This argument is ridiculous. There is nothing to suggest than any of the parties to the Compromise Agreement interpreted Wis. Stat. § 102.27 in the manner that the Bankruptcy Court did, so Appellee's implication is hardly enough to find the existence of legal mistake.

Further, Appellee's comparison between the language directing the payment of $30,000 to Fortune and the language regarding the payment of the $400,000 is similarly unreasonable. Appellee goes so far as to claim that it could be an abuse of the bankruptcy process for Ryan to be paid while the medical providers were not, Appellee Brief, p. 24, but ignores the plain distinction between the two payments. While the OWCH Order specifically ordered a direct payment in a sum certain to Fortune for the $30,000, for the $400,000 the OWCH Order directed payment to FMSC's trust account to be disbursed as Ryan saw fit. R. 4-7, p. 26. What other interpretation could there be of an order directing payment of a lump sum of funds to the claimant's attorney, nominally for disbursement to medical providers, whose

bills are more than double the sum awarded, than to say that Ryan and FMSC had discretion to negotiate, satisfy, or even discharge those bills in whatever way they saw fit? Appellee's frustration that the OWCH Order does not order direct payment to it, while understandable, is not wrongful conduct.

Appellee attempts to analogize the $400,000 to a check made out to a 3rd party wrongfully deposited into FMSC's account, citing to *In re Bake-Line Group, LLC*, 359 B.R. 566, 575 (Bankr. D. Del. 2007). In doing so Appellee incorrectly asserts that FMSC is "holding money from the Employer/Insurer that the Employer/Insurer owes to medical providers and lienholders." Appellee Brief, p. 25. Appellee's claim ignores the basic nature of a Compromise Agreement. The Employer/Insurer disputed that Ryan's injury was work related and disputed the medical necessity of Appellee's services. There has been no finding or admission of liability on the part of the Employer/Insurer and as a result, the Employer/Insurer never owed anything to the medical providers. The Compromise Agreement states in the relevant part "IT IS FURTHER STIPULATED AND AGREED that this is a settlement and COMPROMISE agreement of a disputed claim in which the Employer and Insurer deny liability as set forth above." R. 4-4, p. 38 (emphasis original). The OWCH Order also states that "a valid dispute exists between the parties which is proper subject matter for compromise." R. 4-7, p. 25. If Ryan's case had proceeded to a hearing and the Employer/Insurer had been found liable, the

15

administrative law judge would have made findings of fact and could have directed the payment of specific amounts to specific medical providers. But instead, the parties entered into the Compromise Agreement and as a result there were no findings or admissions of liability. The $400,000 was part of the compensation paid and owed to Ryan to resolve Ryan's worker's compensation claim. That $400,000 paid into FMSC's trust account in no way belongs to any medical provider or lienholder; rather, it belongs to Ryan, and he may use those funds to satisfy his medical providers in whatever way he sees fit, including filing bankruptcy to discharge those claims. And to be clear, Appellee, nor any other medical provider has nor asserts a lien on the $400,000.

Appellee also makes the incredible assertion that Fortune was somehow obligated to inform medical providers that the language in the Compromise Agreement which allegedly directed payment to the medical providers "may not have that effect" and that his acting as a trustee of an alleged express trust in their favor would be a conflict of interest. Appellee Brief, p.p. 24-25. Appellee cites no authority for this claim, likely because no such authority exists. Fortune only has one client in this matter, Rodney Lee Ryan, and he has no additional obligation to protect the rights and interests of the medical providers. Medical providers are not parties to a worker's compensation claim, and the only party with the authority to request that payment to medical providers be made directly through the worker's

compensation award is the claimant. "At the request of the claimant medical expense, witness fees, and other charges associated with the claim may be ordered paid out of the amount awarded." Wis. Stat. § 102.26(3)(b). Even if Fortune had informed Appellee or any other medical creditor of the likely effect of the Compromise Agreement, Appellee nor any other creditor would have a remedy or right to object to the OWCH Order, because a medical provider is not a party to a worker's compensation proceeding nor to this Compromise Agreement. Appellee's argument that Fortune owed some sort of duty to protect the interests of his client's creditors, such that he might be required to advocate on their behalf and make disclosures of information relating to his representation of Ryan to them is completely absurd and unsupported by fact or law.

## CONCLUSION

The Bankruptcy Court erred in holding that the $400,000 awarded in the OWCH Order was held in express trust or in a constructive trust for medical providers and erred in holding that the $400,000 was not property of the Debtors' bankruptcy estate. Appellee cannot overcome the plain meaning of Wis. Stat. § 102.27, which prevents creditors like Appellee from taking the $400,000. The Bankruptcy Court's Orders must be overturned.

17

Dated this 21st day of July 2021.

                                    **STEINHILBER SWANSON LLP**
                                    Attorneys for Appellants

                          By: _/s/ Claire Ann Richman_
                                    Claire Ann Richman
                                    Colton J. Chase
                                    122 W. Washington Ave., Suite 850
                                    Madison, WI 53703-2718
                                    Tel: (608) 630-8990
                                    Fax: (608) 630-8991
                                    crichman@steinhilberswanson.com
                                    cchase@steinhilberswanson.com

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF BANKRUPTCY PROCEDURE 8015

This brief complies with Federal Rule of Bankruptcy Procedure 8015(a)(7)(B)(ii) by virtue of the fact that the content subject to the limitations of that provision consists of 4,304 words (said number being fewer than the 6,500 permitted) typed in a proportionally spaced font.

This brief complies with the typeface requirements of Federal Rule of Bankruptcy Procedure 8015(a)(5) and the type-style requirements of Federal Rule of Bankruptcy Procedure 8015(a)(6) by virtue of the fact that it was prepared using Microsoft Office Word 365 and typed in fourteen-point Times New Roman font.

 Dated this 21st day of July 2021.

**STEINHILBER SWANSON LLP**
Attorneys for Appellants

By: *_/s/ Claire Ann Richman_*
Claire Ann Richman
Colton J. Chase
122 W. Washington Ave., Suite 850
Madison, WI 53703-2718
Tel: (608) 630-8990
Fax: (608) 630-8991
crichman@steinhilberswanson.com
cchase@steinhilberswanson.com

Case 2:21-cv-00449-BHL   Filed 07/21/21   Page 23 of 23   Document 11