In the

# United States Court of Appeals

## For the Seventh Circuit

No. 22-1536

RODNEY RYAN, JILL RYAN, and FORTUNE & MCGILLIS, S.C.,

*Appellants*,

*v.*

BRANKO PRPA MD, LLC,

*Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:21-cv-449 — **Brett H. Ludwig**, *Judge*.

ARGUED SEPTEMBER 30, 2022 — DECIDED DECEMBER 19, 2022

Before WOOD, ST. EVE, and KIRSCH, *Circuit Judges*.

KIRSCH, *Circuit Judge*. Rodney Ryan signed a worker's compensation settlement with his employer that set aside $400,000 for disbursement to the doctors who treated him for his workplace injury. He then filed for bankruptcy and tried to keep those funds for himself while having his debts to his doctors eliminated. The bankruptcy court recognized Ryan's attempts for what they were and rejected them. Ryan appealed to the district court, which affirmed. So do we.

I

A

When an individual faces financial distress—an inability to pay his creditors—he may file for bankruptcy. Doing so freezes his financial universe. None of his assets can be used to pay any debts outside of the normal course—things like keeping food on the table, gas in the car, etc.—until the bankruptcy petition is resolved, or "discharged." When the petition is discharged, the debtor's liabilities are (with certain irrelevant exceptions) eliminated.

One of the first steps in the bankruptcy process is to determine the debtor's estate. The estate comprises the pot of assets that will be divided amongst creditors according to various rules. Although § 541(a) of the Bankruptcy Code (found in Title 11) purports to define the property of the estate, much of what is or is not within the estate is governed by state law. That is, the Code looks to state property law to define the estate unless there is a bankruptcy reason to modify state law—the so-called "*Butner* Principle," after *Butner v. United States*, 440 U.S. 48 (1979).

To define the estate, the debtor lists what he owns on forms called schedules. The schedules also list how much the debtor owes and to whom. A party that is listed as a creditor on a schedule receives notice of the debtor's petition. An interested party, like a creditor, may object to the schedules for one reason or another. Doing so often creates what is known as an adversary proceeding—essentially a lawsuit within the bankruptcy proceeding—to determine how a particular asset or liability should be disposed of. See Fed. R. Bankr. P. 7001.

The Code (through § 522) and state law exempt certain property from the reach of creditors. Exempt property differs from property that is excluded from the estate altogether. Exempt property is a part of the estate, but it will not be liquidated and divided amongst creditors. It remains the debtor's to have and to hold. Excluded property, on the other hand, is completely unaffected by the bankruptcy. So if, for example, the debtor holds legal, but not equitable, title to property, it is excluded from the estate pursuant to § 541(d). State law is often essential in determining whether a party owns legal, but not equitable, title to an asset.

This case asks us to determine whether a portion of a Wisconsin worker's compensation settlement that was set aside for the doctors who treated the employee is exempt property or whether it is excluded property.

B

Rodney Ryan sought worker's compensation benefits for an alleged workplace injury. When his employer denied his claim, he contested the denial before the Wisconsin worker's compensation commission. But before any final adjudication was made, Ryan and his employer settled. They entered into a Compromise Agreement: "[T]he Employer and Insurer will pay as follows: $150,000 to Rodney Ryan, minus attorney fees and costs listed below; $400,000 to the Trust Account of Fortune & McGillis for disbursement to medical providers and lienholders, it being understood that from any balance remaining Mr. Ryan shall receive 80% and Fortune & McGillis shall receive 20%." Fortune & McGillis, the law firm Ryan hired to help him pursue his claims, received $30,000 in fees

for its work.* And the employer agreed to fund a Medicare Set Aside to help cover Ryan's future medical expenses.

A state administrative law judge approved the Settlement in full. The ALJ's Order authorizing the Settlement provided: "Within 21 days from the date of this order, the respondent and insurance carrier shall pay to the applicant, Rodney Lee Ryan, the sum of One hundred twenty thousand dollars ($120,000.00); to the applicant's attorney, Richard A. Fortune, the sum of Thirty thousand dollars ($30,000.00) as fees; and to the Trust Account of Fortune & McGillis SC, the sum of Four hundred thousand dollars ($400,000.00) for disbursement to medical providers and lienholders, it being understood that from any balance remaining the applicant, Rodney Lee Ryan, shall receive 80 percent and Fortune & McGillis SC shall receive 20 percent."

Less than a month later and before any of the $400,000 was distributed to his doctors, Ryan (jointly with his wife, Jill) filed for bankruptcy. In his bankruptcy schedules, Ryan attempted to exempt the $400,000 that the Order set aside "for disbursement to medical providers" from the bankruptcy estate. Ryan's argument for exemption rested on a provision of Wisconsin law—Wisconsin Statutes § 102.27(1)—that says no "claim for [worker's] compensation, or compensation awarded, or paid, [may] be taken for the debts of the party entitled thereto." Ryan argued that since state law exempted that property from creditors' reach outside of bankruptcy, that property was likewise unreachable in bankruptcy.

---

* Fortune & McGillis is also an appellant in this case. For simplicity, we use "Ryan" to refer to all appellants.

Ryan's bankruptcy schedules also disclosed that he owed more than $800,000 in unpaid medical bills to various creditors, including Dr. Branko Prpa. Prpa is a Milwaukee surgeon who treated Ryan after his workplace injury. When he learned that Ryan was seeking to exempt the $400,000, Prpa filed (through his LLC) an objection. That objection also yielded an adversary proceeding before the bankruptcy court to determine whether the $400,000 would flow to Ryan as exempt property or was excluded and would flow to Prpa and his fellow medical creditors.

Prpa's objection sprang from another provision of Wisconsin law. Section 102.26(3)(b)(2) says that, "[a]t the request of the claimant[,] medical expense[s], witness fees[,] and other charges associated with the claim may be ordered paid out of the amount awarded." According to Prpa, the $400,000 set aside by the Order for "medical providers and lienholders" constituted "medical expense[s] … ordered paid out of the amount awarded." As a result, those funds were never Ryan's because they were held in trust by Fortune & McGillis for the doctors' benefit—Ryan had at most legal, but not equitable, title to them. Since the filing of bankruptcy neither adds nor subtracts from the property held by the debtor, Prpa argued that those assets remained available for disbursement to Ryan's doctors notwithstanding the bankruptcy petition.

The bankruptcy court granted Prpa's motion for summary judgment, concluding that Ryan could not exempt the $400,000. The bankruptcy court reasoned that the Order created an express trust in favor of Prpa and his fellow doctors: there was (1) a trustee, Fortune & McGillis; (2) a beneficiary, the "medical creditors and lienholders"; and (3) trust property, the $400,000. The bankruptcy court concluded that even

if there were no express trust, there were grounds to impose a constructive trust because allowing Ryan to keep the $400,000 would have amounted to unjust enrichment resulting from a wrong. Either way, the result was the same: the $400,000 was not Ryan's property, so it was not a part of his bankruptcy estate.

The district court affirmed in all respects. This timely appeal followed.

II

Ryan renews his contention that Wisconsin law prohibits the $400,000 from going to anyone but him. Because the decision to grant summary judgment turned on the application and effect of Wisconsin law, we owe no deference to the lower courts' conclusions. *In re Mississippi Valley Livestock, Inc.*, 745 F.3d 299, 302 (7th Cir. 2014).

We turn first to whether Ryan has an equitable interest in the $400,000 the Order set aside for his doctors, then take up the question of whether Wisconsin statutes supersede the Order's text.

A

The text of the Settlement and the Order approving it established an express trust in favor of medical creditors like Prpa. In Wisconsin, an express trust is created when three things converge: (1) a trustee, who holds the trust property and is subject to equitable duties to manage it for the benefit of another; (2) a beneficiary, to whom those duties are owed; and (3) trust property, which is held by the trustee for the beneficiary. *Wisconsin Med. Soc'y v. Morgan*, 787 N.W.2d 22, 38 (Wis. 2010); *Sutherland v. Pierner*, 24 N.W.2d 883, 886 (Wis. 1946). Whether a trust is created "depends not so much on the

No. 22-1536　　　　　　　　　　　　　　　　　　　　　　　7

language used, as on the characteristics and purposes of the relationship." *In re Mueller Travel Agency, Inc.*, 201 N.W.2d 589, 592 (Wis. 1972) (cleaned up).

Both the bankruptcy court and the district court looked to the structure of the agreement and its intended purpose to conclude that the Order created an express trust. Their conclusion is correct. The Order commands the employer and its insurer to deposit the $400,000 into Fortune & McGillis's "Trust Account." Wisconsin Supreme Court Rule 1.15(b)(1) makes clear that attorney trust accounts are used for funds belonging to clients and third parties, so the first requirement of an express trust—a trustee—is satisfied. Fortune & McGillis knew that Ryan's medical creditors had an interest in the $400,000 because the Order said as much. That makes the doctors the beneficiaries—the second requirement. Finally, the $400,000 is the trust property. Because all three elements of an express trust are satisfied, the Order created an express trust for the benefit of Ryan's medical creditors.

The bankruptcy court's citation to *In re Lenk*, 44 B.R. 814 (Bankr. W.D. Wis. 1984), is helpful. In *Lenk*, the debtor was potentially liable for a car accident caused by his uninsured minor son. The Wisconsin Department of Transportation required the debtor to deposit funds with it in the event of a judgment against the son. The funds were raised by mortgaging the family home, which was ultimately foreclosed upon. The father filed for bankruptcy and tried to claim the funds as a "homestead exemption"—a provision that allows a debtor to keep his home. A judgment was eventually entered against the son for the car accident, and the deposited funds were used to satisfy the judgment. *Id*. at 815–16. The *Lenk* court concluded that the funds were not protected by the homestead

exemption because they were not a part of the estate: a trust was created—even though no magic words were used—when the father handed the funds to the Department of Transportation for the benefit of the accident victim. *Id*. at 816–17.

The story is much the same here. The employer's insurer paid $400,000 to Fortune & McGillis for the benefit of Ryan's doctors. And, just as in *Lenk*, there was a possibility that some of that money could come back to Ryan: here, if the medical expenses were negotiated and resolved for less than $400,000; in *Lenk*, if the son was found not liable for the accident. In both cases, the clear intent was to deposit funds with a neutral intermediary for the benefit of a third party. Since neither Ryan nor Lenk held equitable title to the trust property, it was excluded from both estates. 11 U.S.C. § 541(d); see *In re Marrs-Winn Co., Inc.*, 103 F.3d 584, 589 (7th Cir. 1996) (holding that the "bankruptcy estate does not include property held in trust for another").

None of Ryan's counterarguments persuades. Ryan makes much of the fact that the Order does not contain the magic words "for the benefit of" or "to be held in trust." True enough, but the Order's language—"for disbursement to"—is an even more powerful indicator that Ryan has no equitable interest in the funds. If a trust is created "for the benefit of" someone, the trust might pay interest to the beneficiary either without distribution of the principal or with the principal ultimately returning to the trust's settlor. If, on the other hand, a trust receives funds "for disbursement to" someone, the settlor likely has no prospect of seeing those funds again.

Ryan points to the specificity with which the Order directs payment to Ryan's attorneys: When the Order wants to direct

No. 22-1536                                                                 9

funds to a specific recipient, it knows how to do so, he argues. Two points in response.

First, the lack of specificity in the Order makes sense as to medical providers whose identities or debts may have been unknown to the insurer and the worker's compensation ALJ. Recall, the Settlement came before the bankruptcy petition, so the ALJ did not have the benefit of the bankruptcy schedules listing what Ryan owed and to whom.

Second, the Order's specificity as to the amount payable to Ryan's attorneys complies with the strict regulation of attorney's fees in Wisconsin worker's compensation awards: Attorneys are entitled to no more than 20% of a claimant's award. Wis. Stat. § 102.26(2). The Settlement awarded Ryan $150,000 "minus attorney fees and costs" of $30,000. The Order, in turn, directed that $120,000 be paid to Ryan and $30,000 be paid to Fortune & McGillis. Both scrupulously adhered to the 20% limit. No such limit exists on payments to doctors who rendered care to the injured employee.

Ryan suggests there was never an intent to give the doctors any sort of special interest in the funds because everyone knew that the doctors were owed far more than $400,000. But state interpleader actions can sort out how much of a haircut each doctor will have to take on his or her claims. See *Kaiser v. Prudential Ins. Co. of Am.*, 76 N.W.2d 311, 316 (Wis. 1956) ("The purpose of filing an interpleader in such circumstances is to allow the contesting parties to have their rights determined in a Court of equity so as to protect the Plaintiff from double liability, and to preserve intact the rights of any claimant to the fund, but not to confer any additional rights upon claimants.") (quoting *Johnson v. Johnson*, 139 F.2d 930, 933 (5th Cir. 1943)). Some recovery is surely preferable to no recovery,

which is what Ryan asks us to approve. Indeed, as we understand it, a state court proceeding to resolve how much each doctor will take from the $400,000 remains stayed pending resolution of this appeal.

Interpleader is also the answer to Ryan's observation that the trust puts Fortune & McGillis in something of an awkward position. Thanks to the residuary provision, it stands to gain 20¢ for every dollar that it doesn't disburse to the medical providers to whom it owes fiduciary duties. Such an arrangement is far from unusual for attorneys, and allowing a state court to sort out who gets what takes the pressure off of Fortune. It bears noting that Fortune, like its client, agreed to the Settlement's terms—this was not foisted upon it. And, of course, Fortune would be in the exact same position notwithstanding the bankruptcy petition.

Our conclusion that the Order created an express trust in which Ryan has at most legal, but not equitable, interest means we can pass over in silence the question of whether the imposition of a constructive trust was warranted.

B

Ryan contends that regardless of whether a trust was created, Wisconsin law prohibits the $400,000 from going to anyone but him.

Wisconsin Statutes § 102.27(1) reads, in relevant part, that no "claim for compensation, or compensation awarded, or paid, [may] be taken for the debts of the party entitled thereto." Ryan argues that, since he is the only one who can file for worker's compensation, he is the only "party entitled thereto," and therefore the "compensation" (including the $400,000) cannot be taken to satisfy his debts to the doctors.

No. 22-1536                                                                 11

Prpa counters that Ryan waived § 102.27(1)'s protections when he asked the ALJ to approve the Settlement because "[a]t the request of the claimant[,] medical expense[s], witness fees and other charges associated with the claim may be paid out of the amount awarded." Wis. Stat. § 102.26(3)(b)(2). By asking the ALJ to approve the Settlement creating the trust, Ryan gave that money to the doctors, Prpa argues.

We need not linger on this point. In Wisconsin, worker's compensation settlements are ineffective until approved by the state agency that oversees them. See Wis. Stat. § 102.16(1); Wis. Admin. Code, Dep't of Workforce Dev. § 80.03(2); *Dowe v. Specialty Brass Co.*, 262 N.W. 605, 606 (Wis. 1935). By asking the ALJ to approve the Settlement, Ryan "requested" that his "medical expenses" "be paid out of the amount awarded." Section 102.27(1) thus offers Ryan no relief.

Ryan contends that if we construe the Settlement and Order this way, any creditor could come after a lump sum payment made after a worker is injured—exactly what § 102.27(1) prohibits. But that begs the question: Ryan's payment wasn't one lump sum. Part of it went to him—that's protected from creditors by § 102.27(1). Part of it went to his lawyers—his creditors can't touch that because it is not Ryan's. And part of it was held in trust for his doctors—his creditors can't touch that, either, because Ryan holds no equitable title to those funds. See 11 U.S.C. § 541(d). Prpa concedes that if the award had been a lump sum, as most tort awards are, he'd have no case. But it wasn't, so he does.

Finally, Ryan has no answer for the economic reality of his argument. The practical effect of Ryan's reading would be that Prpa and the other doctors are forever barred from collecting on their debts while Ryan takes the $400,000 free and

clear. The first result is unremarkable; bankruptcies almost always leave some creditors wanting. The second, by contrast, is almost unheard of. We think it unlikely—to put it mildly—that the ALJ or the insurer would have ever agreed to the Settlement if they had known that not a penny would flow to the doctors who incurred hundreds of thousands of dollars in expenses caring for Ryan. We are also mindful that, contrary to his counsel's assertions at oral argument, Ryan used the specter of bankruptcy as leverage when negotiating with Prpa. R.4-4 at 211–12. Ryan cannot explain why Prpa would have negotiated if the debts were going to be discharged. Nor can Ryan explain why he declined to seek clarification from the ALJ as to whether the disputed funds were "set aside" by the Order. Prpa was not a party to the Settlement, so that avenue was unavailable to him.

In short, § 102.27(1) and § 102.26(3)(b)(2) coexist such that where, as here, a claimant requests that funds from his worker's compensation award be set aside for his medical providers, those funds are not protected from his doctors' reach.

C

The final wrinkle to iron out is what effect, if any, we must give the Order's residuary provision. The Order says that anything left after the doctors take from the $400,000 is to be split 80/20 between Ryan and Fortune. Ryan argues that this residual interest in the $400,000 is enough to bring all $400,000 into his estate—that the mere prospect of receiving some crumbs entitles him to the whole pie.

We note at the outset that Ryan's undisputed medical debts are roughly $800,000. That's much more than the

$400,000 set aside to pay those debts. But even if we assume the debts are negotiated such that Ryan would actually see some crumbs, foundational bankruptcy principles show why that alone does not bring the full $400,000 into Ryan's estate.

Although § 541's definition of the "property of the estate" is to be construed broadly and includes contingent interests, it is axiomatic that the property of the estate includes the debtor's claims to property—not the property itself. *Chicago Board of Trade v. Johnson*, 264 U.S. 1, 12 (1924). That is, the bankruptcy estate takes property subject to any preexisting claims or limitations on the debtor's ability to use or dispose of the property. *Id.* "A debtor's interest in a portion of property does not subject the entire property to § 541. Nor does a debtor's claim to property mean that the entire property is part of the bankruptcy estate." *In re Carousel Int'l Corp.*, 89 F.3d 359, 362 (7th Cir. 1996).

An example illustrates how this principle resolves any concern posed by the residuum. Suppose someone slips and falls at a shop because of an employee's negligence. At that moment, she has a claim against the store—an unliquidated chose in action "only to be enjoyed after its satisfaction or enforcement." *Chicago Board of Trade*, 264 U.S. at 12. Until her claim is liquidated, either through settlement or entry of judgment in her favor, she has no right to seize the store's funds. It is the favorable resolution of her suit that gives her title to the shop's funds.

Now suppose our shopper is forced into bankruptcy by the medical expenses she incurs from her fall. At all times, her estate's property is the same inside of bankruptcy as it would be outside. "A debtor's property does not shrink by happenstance of bankruptcy, but it does not expand, either." Douglas

14 No. 22-1536

Baird, Elements of Bankruptcy 97 (6th ed. 2014). Unless the bankruptcy trustee settles or wins a judgment against the store, the estate property includes only an unliquidated claim.

So too here. Even if the contingent remainder interest is a part of Ryan's estate, that is all that is a part of the estate, not the full $400,000. Put § 102.27(1) aside for the moment. Until the contingency is resolved—here by fulfilment of the trust purpose, in our slip-and-fall hypothetical by settlement or entry of judgment in the tort suit—the estate has no right to distribute any of the $400,000 to creditors. Upon liquidation, Ryan would be vested with equitable title in whatever funds remain. So if Fortune ably negotiates with the medical providers such that a portion of the $400,000 remains, that portion would become property of the estate for Ryan's creditors to divide. But because the trust's purpose has not yet been fulfilled, Ryan currently has equitable title to none of the $400,000. "To hold otherwise would necessarily lump into the bankruptcy estate assets owned by others, but only claimed by the debtor." *Carousel Int'l Corp.*, 89 F.3d at 362.

Ryan never listed his claim to the residuum—in which he does have equitable title—on his bankruptcy schedules, so we need not resolve whether he could have exempted that claim under § 102.27(1). For present purposes, it is enough to return to the principle outlined in *Chicago Board of Trade*: the property of the estate includes the debtor's interests in property—no more, no less.

### III

In sum, we conclude that the Order created an express trust in favor of medical creditors like Prpa and that, by asking the ALJ to approve the Settlement's identical terms, Ryan

No. 22-1536　　　　　　　　　　　　　　　　　　　　　15

requested that his medical expenses be paid out of his award. The bankruptcy and district courts were right to sustain Prpa's objection.

AFFIRMED

CERTIFIED COPY
A True Copy
Teste:
_____
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## FINAL JUDGMENT

December 19, 2022

Before
DIANE P. WOOD, *Circuit Judge*
AMY J. ST. EVE, *Circuit Judge*
THOMAS L. KIRSCH II, *Circuit Judge*

| | |
|---|---|
| No. 22-1536 | RODNEY RYAN, JILL RYAN, and FORTUNE & MCGILLIS, S.C., Appellants<br><br>V.<br><br>BRANKO PRPA MD LLC, Appellee |
| **Originating Case Information:** | |
| District Court No: 2:21-cv-00449-BHL<br>Eastern District of Wisconsin<br>District Judge Brett H. Ludwig | |

The judgment of the District Court is **AFFIRMED**, with costs, in accordance with the decision of this court entered on this date.

CERTIFIED COPY
A True Copy
Teste:

_____
Clerk of Court

form name: **c7_FinalJudgment**　　(form ID: **132**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

January 10, 2023

To: Gina M. Colletti
UNITED STATES DISTRICT COURT
Eastern District of Wisconsin
Milwaukee, WI 53202-0000

| | |
|---|---|
| No. 22-1536 | RODNEY RYAN, JILL RYAN, and FORTUNE & MCGILLIS, S.C., Appellants<br><br>V.<br><br>BRANKO PRPA MD LLC, Appellee |
| **Originating Case Information:** | |
| District Court No: 2:21-cv-00449-BHL<br>Eastern District of Wisconsin<br>District Judge Brett H. Ludwig | |

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

RECORD ON APPEAL STATUS:                          No record to be returned

form name: **c7_Mandate**   (form ID: **135**)